## COMMONWEALTH *vs.* AMOS KIMBALL.

Proof that during the time charged in an indictment for maintaining a house as a liquor nuisance, and at a time, however brief, when the house was so used, the defendant was present, having the entire control and superintendence of the house, will sustain the indictment, although he was only a clerk or servant of the householder.

INDICTMENT on the Gen. Sts. *c.* 87, for keeping and maintaining a tenement in Lynn as a liquor nuisance. At the trial in the superior court, before *Lord*, J., "there was evidence tending to show that the tenement was used, during the time alleged, for the illegal sale and illegal keeping of intoxicating liquors, and that the defendant during such time, in said tenement, made several sales of such liquors ; but it was contended by the defendant that he did not keep and maintain the tenement, but that he was there, and did all that he did there, as the clerk and servant of John B. Granger, who was the proprietor and keeper of the place. And there was also evidence tending to prove that the local and other officers, who testified in behalf of the Commonwealth, knew the place as, and understood it to be, Granger's place, and not the defendant's, and that Granger was the proprietor, and the defendant his clerk."

The judge instructed the jury, that, "to constitute a person the keeper of a place, and to render him liable for keeping and maintaining a place where intoxicating liquors are illegally sold, it is not necessary that he should be the owner or proprietor, or have any interest in the business, but it is enough, if, during any portion of the time when the place was thus used, he was pres-

ent, having the entire control of and superintendence over the place ; and if the owner and the keeper of such a place leaves his clerk or servant in charge of the same, as for instance for a day or a fraction of a day, and during his absence such clerk or servant does acts in pursuance of the usual business of the place, for such time the clerk or servant is the keeper of the place, and as such can be properly indicted and convicted, if during such time there is such illegal use of the premises, and the place and business were entirely under his control."

The jury returned a verdict of guilty, and the defendant alleged exceptions.

*S. B. Ives, Jr.,* for the defendant.

*C. Allen,* Attorney General, for the Commonwealth.

WELLS, J. In misdemeanors, all who participate in the offence, knowingly and intentionally, are principals ; and may be convicted thereof, either separately or jointly.

Thus in *Mann's case,* 4 Gray, 213, a clerk, who kept the owner's books, took orders for coal, collected and paid bills, was convicted of maintaining a nuisance by means of the coal yard, from which large quantities of coal dust were emitted. It was held that he was rightly convicted, if he, "with a knowledge of what was done, aided, promoted, and encouraged the doing of the acts which constituted the nuisance."

In *Gannett's case,* 1 Allen, 7, aiding and assisting others in committing the offence was held sufficient to convict one indicted for keeping a house of ill-fame.

In *Tryon's case,* 99 Mass. 442, a married woman, who sometimes made sales of liquor when her husband was absent from home, and who declared a purpose to coöperate with him in selling, was held to have been rightly convicted of keeping and maintaining a building for the illegal keeping and sale of intoxicating liquors ; although it appeared that "the husband was the owner of the premises, and kept them as a hotel, and was in and about the same most of the time, attending to and supervising his business ;" that "he alone purchased and placed in the hotel all the liquors kept therein ;" and that "the keeping of the house was the business of the husband, who had full and entire control thereof."

In *Regina* v. *Williams*, 1 Salk. 384, a married woman was indicted jointly with her husband for keeping a bawdy house. In the opinion it is said : " The keeping is not to be understood of having or renting, in point of property ; for in that sense she cannot keep it ; but the keeping here is the governing and managing a house in such disorderly manner as to be a nuisance."

These decisions we think sustain the ruling and instructions to the jury in the present case. The defendant was a clerk or ser-·vant of the proprietor ; there was evidence that he had himself made several sales ; and the jury must have found, under the instructions given them, that during some portion of the time, when the place was so used as to make it a nuisance, " he was present, having the entire control of and superintendence over the place." If he had such control and superintendence, we do not think the length or shortness of the period is material.

The nuisance consists in the illegal use of the building or place. Section 7 of chapter 87 of the General Statutes makes any one who " keeps or maintains such common nuisance " liable to punishment. This phraseology is adapted to the idea of a nuisance resulting from the perversion of the building or place to an illegal use. To " keep " may, in its ordinary and more obvious sense, apply only to one who exercises control or proprietorship of the building or place used. But to " maintain " has no such limited application. The building is not maintained by the occupant ; but the nuisance is maintained by prosecuting therein the illegal traffic. The alternative, " whoever keeps or maintains," will apply therefore either to the one who controls the occupation and procures or permits the illegal use ; or to one who engages in the illegal use, and thus maintains or aids in maintaining the public nuisance.                    *Exceptions overruled.**

---

* A similar decision was made at September term 1871 in Hampden, in the case of

COMMONWEALTH *vs.* THOMAS MARONEY.

INDICTMENT on Gen. Sts. c. 87, § 7, for keeping and maintaining during a definite period of time a tenement used for the illegal sale and illegal keeping of intoxicating liquors. Trial, and verdict of guilty, in the superior court, before *Lord,* J., who allowed a bill of exceptions, which stated the case as fol-

---

lows: " It was a question at the trial, whether or not the defendant did keep and maintain the premises. Upon this question, the judge instructed the jury that it was not necessary that the defendant should have kept and maintained the premises during all the time charged, nor that he should any of the time have been the proprietor thereof, or had any interest in the property there or the profits of the business ; but it would be sufficient to prove that the defendant, even for an hour, had the charge or control of the premises as clerk or agent of the proprietor, either with or without compensation, and that during such period of control and charge intoxicating liquors were illegally kept or sold upon said premises. The defendant at the proper time excepted to this instruction."

*G. M. Stearns,* for the defendant.

*C. Allen,* Attorney General, for the Commonwealth.

BY THE COURT. This case is governed by that of *Commonwealth* v. *Kimball.* The bill of exceptions was manifestly intended to raise only the question whether it was necessary to prove that the keeping and maintaining was during all the time charged, or that the defendant had any interest in the premises or the property there or the profits of the business; and not whether the ruling given was sufficiently particular as to his presence, knowledge or assent at the time of illegally keeping or selling intoxicating liquors on the premises. See also *Commonwealth* v. *Heffron,* 102 Mass. 148. *Exceptions overruled.*