CATHERINE B. MUNRO *vs.* CALVIN STOWE.

Suffolk. December 8, 1899. — January 4, 1900.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

*Conversion — Attachment — Trial — Evidence.*

In an action against an officer for the conversion of personal property, which either he personally removed or permitted to be removed while he held it under attachment, to a house where the plaintiff had no rights, it appearing that upon two occasions when there was no attachment upon the goods the plaintiff ineffectually demanded a return of them, the defendant is not entitled to a ruling that if " at the dissolution of the attachment the keeper was removed, and the goods were left where they were found when the attachment was made, the defendant is not liable," or that he " was not bound, upon dissolution of the at-

tachment, to do anything more than to remove his keeper and leave the goods where he found them."

After the defendant's counsel, in an action against an attaching officer for the conversion of personal property, had cross-examined the plaintiff for about two hours as to the general evidence, and had also examined her in detail in regard to many items of the declaration in such a way as to indicate that little if anything more of importance could be elicited by further examination, the judge informed the counsel that only one hour more would be allowed him for the cross-examination of that witness. *Held*, that this direction appeared to be entirely reasonable.

Upon the facts of this case, which was an action for the conversion of a quantity of furniture in a lodging-house, the witnesses properly were allowed to testify to its value as a whole.

The declarations and conduct of a witness, in an action for the conversion of personal property, when trying to sell the property, which tend to contradict his testimony in regard to its value, are competent.

TORT, for the conversion of a quantity of household furniture. At the trial in the Superior Court, before *Bond*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions. The facts appear in the opinion.

*O. Storer*, for the defendant.

*F. P. Curran*, for the plaintiff.

KNOWLTON, J. The plaintiff was the owner of a quantity of household furniture in a lodging-house. She made a bill of sale of it as security for the payment of a debt, and the holder of the bill of sale, with her consent, leased it to one Heath, who knew the condition of the title. Afterwards the plaintiff took an assignment of the lease from the holder of the bill of sale, and demanded from Heath the payments to which she was entitled, after notice to him of the assignment. He neglected to pay, and by the terms of the lease she was entitled to the goods on account of his failure to perform his contract. Thereupon, on May 3, 1897, Heath caused the defendant, as a constable, to attach the furniture on a writ returnable on May 22, 1897, in which Heath was plaintiff, and the present plaintiff was defendant. This attachment was dissolved on June 25, 1897, by a bond given in due form under the statute. On June 26, 1897, this defendant, as a constable, attached the property again on a writ sued out by Heath against the same party. This writ was returnable on July 24, 1897, but it never was returned to the court, because, as this defendant says, it could not be found on the return day. While the property was held under the first

attachment, it was removed from 511 Massachusetts Avenue, the lodging-house where it was when first attached, to 666 Tremont Street, the removal having been made either by Heath or by the present defendant. While these attachments were in force the goods were in charge of a keeper appointed by this defendant. After the failure to enter the last mentioned writ, another attachment was made by this defendant upon the same property, on a writ bearing date July 26, 1897, in which the same parties were plaintiff and defendant respectively, and a keeper was again placed in charge. This writ was duly entered in the court, but the proceedings were terminated by a nonsuit of the plaintiff in the following September. Heath testified in cross-examination that the purpose of attaching the property on these writs was to retain it, and prevent the present plaintiff from obtaining possession of it. On June 26, 1897, and again on November 4, 1897, this plaintiff demanded a return of the goods from the present defendant, but he failed to return them. The defendant's exceptions are to the refusal of the judge to give two instructions requested,* to an order limiting the cross-examination of a witness, and to the admission of certain testimony in regard to the value of the goods.

The instructions requested were not applicable to the case. On the admitted facts the defendant was liable for a conversion of the property. It is shown by evidence, which appears to have been undisputed, that upon two occasions when there was no attachment upon the goods the plaintiff ineffectually demanded a return of them. The failure to deliver them constituted a conversion. The ruling that "the defendant was not bound, upon dissolution of the attachment, to do anything more than remove his keeper, and leave the goods where he found them," would be correct as applied to a case where he had attached the goods upon the premises of the defendant in this action, and left them there in charge of a keeper. In such a

---

* The instructions requested were as follows: "1. If the jury find that at the dissolution of the attachment the keeper was removed, and the goods were left where they were found when the attachment was made, the defendant is not liable. 2. The defendant was not bound, upon dissolution of the attachment, to do anything more than remove his keeper and leave the goods where he found them."

case the removal of the keeper would leave the property in the defendant's possession. But it would have no application to a case like the present, in which the attaching officer either personally removed the property, or permitted it to be removed while he held it under attachment, to a house where the defendant had no rights.

The court may impose a reasonable limitation upon the cross-examination of a witness. *White* v. *McLean*, 47 How. Pr. 193. *Rand* v. *Newton*, 6 Allen, 38. *People* v. *Court of Oyer & Terminer*, 83 N. Y. 436. *Gatterson* v. *Morse*, 58 N. H. 165. *Strauss* v. *Meertief*, 64 Ala. 299. We see nothing to indicate that this power of the court was improperly exercised in the present case. After the defendant's counsel had cross-examined the plaintiff for about two hours as to the general evidence, and had also examined her in detail in regard to fourteen items of the declaration in such a way as to indicate that little if anything more of importance could be elicited by further examination, the judge informed the counsel that only one hour more would be allowed him for the cross-examination of that witness. So far as appears from the bill of exceptions, this direction was entirely reasonable.

The plaintiff and two other witnesses were allowed to testify as to the value of the furniture. They testified in such a way as to warrant the judge in allowing them to give their opinions. Each of them had been at one time very familiar with the property, and at that time had considered it in reference to its value. Each of them had had considerable experience in buying and selling household furniture. It is true that their experience had been chiefly in determining the value of furniture in furnished houses, to be used with the house, but that necessarily involved a consideration of the cost of the furniture, and its value apart from the house. The questions put to each of them were proper, and if some of the answers were mistakenly made upon a false assumption, there was ample opportunity for correction, and in the course of the trial proper information and modifications were given to the jury. The fact that these witnesses could not remember very particularly the numerous individual articles which made up the list of things alleged to be converted, did not make it necessary to reject their testimony. Each of

the witnesses had looked over the whole while considering its value. Heath testified in such a way as to indicate that the goods delivered under the bill of sale were the same taken by the defendant. The list given in the declaration was identical with that in the bill of sale, and he said that most of the goods named were at the place of attachment when each attachment was made, but that there were quite a number of articles named which had never been at either place. This was equivalent to a statement that there was a mistake in the list contained in the bill of sale, while the attachment covered all the goods which were in fact at the house when the bill of sale and the lease were made, and when the plaintiff's witnesses examined the property. In a case like the present, where the property had been for a considerable time out of his possession, it would be difficult, if not impracticable, for a plaintiff to produce definite evidence as to the value of each article included in the furnishings of a large house, and we see no objection to permitting witnesses who had examined the whole to testify in chief as to its value as a whole.

Nor was the evidence incompetent by reason of the length of time between the examinations of the witnesses and the conversion. Heath and his wife testified that he found the goods at the house in a bad condition, and that they were in as good condition at the time of the trial as when the attachment was made. The time when he found them in bad condition, as he says, was the exact time to which the testimony of the plaintiff and of one of her witnesses relates. The testimony of the other of her witnesses relates to a later time, while the goods were in Heath's possession. Moreover, it was only six or seven months between the time when the plaintiff made her bill of sale and the defendant made the first attachment, and the judge might well think that there was no such probability of material change in their condition as to require the exclusion of the evidence.

Heath's declarations and conduct, when trying to sell the property, were competent as tending to contradict his testimony in regard to its value.

*Exceptions overruled.*