CHARLES E. JENNINGS *vs.* JOHN B. ROONEY.

Suffolk.  May 21, 1903. — June 18, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, LORING, & BRALEY, JJ.

*Witness*, Cross-examination.  *Evidence*, Materiality, Competency.

In an action by a real estate broker for a commission for selling a mill privilege of the defendant, it is within the discretion of the presiding judge, to allow questions to be put to the defendant on cross-examination to show that a company to which the privilege was let and of which the defendant was treasurer was losing money and that the defendant knew that the president of the company had sold his stock in it, as tending to show a motive of the defendant for selling his property.

In an action by a real estate broker for a commission for selling a mill privilege of the defendant, it is within the discretion of the presiding judge to exclude evidence offered by the defendant that in a certain conversation about the privilege in question the plaintiff's agent asked also about a certain other mill privilege.

Where it is competent for a plaintiff to show that his agent had knowledge of a certain fact at a certain time he may show that a conversation took place between himself and his agent on the subject.

In an action by a real estate broker for a commission for selling certain property of the defendant, the defendant having testified that he met at a certain office the person who became the purchaser of his property together with one D., the plaintiff can call D. in rebuttal to testify that he went with the purchaser to the office in question in consequence of a talk with the plaintiff's agent.

CONTRACT for services in selling a certain mill privilege. Writ dated April 13, 1899.

At the trial in the Superior Court before *Bond*, J., the jury returned a verdict for the plaintiff in the sum of $460; and the defendant alleged exceptions.

*T. E. Grover & H. H. Pratt*, for the defendant.

*S. L. Whipple, W. R. Sears & H. W. Ogden*, for the plaintiff.

BRALEY, J. In this case the plaintiff, a real estate broker, seeks to recover a commission as compensation for his services in selling for the defendant the "Union Mill Privilege in Walpole."

The evidence for the plaintiff tended to show that the privilege was held under a lease by the "Windmill Light and Power Company," and all negotiations with the defendant and the officers of the company were conducted and a purchaser found and sale made by Thomas B. Podbury, who was in the employment of and represented the plaintiff.

The defendant denied that he had requested or authorized Podbury to find a purchaser of the privilege, or that he had placed the sale of the property with either the plaintiff or Podbury, and so far as can be ascertained from the bill of exceptions, apparently contended that in all that Podbury did he was seeking to buy the privilege for a customer of the plaintiff, and that the sale subsequently made to one Elwell was effected independently of any efforts of the plaintiff.

The plaintiff having obtained a verdict, the case is before us on exceptions by the defendant to the admission and exclusion of evidence at the trial. Five of the exceptions relate to the admission of certain questions put to the defendant Rooney on cross-examination, and may be considered together; while of the three remaining, one is to the rejection of certain evidence offered by the defendant, and two refer to testimony in rebuttal put in by the plaintiff.

1. It became evident in the progress of the case that the defendant had been interested as a stockholder in and was treasurer of a corporation known as the "Windmill Light and Power Company," of which Mr. Joseph J. Feely, who was the only witness called by the defendant, was president and also a stockholder; and that the company had a lease of the privilege. The financial success of the enterprise was open to doubt, and how far this led to a sale of his stock by Feely and furnished a reason why the defendant, who knew of it, would be willing or desirous to dispose of the mill privilege was a legitimate matter of inquiry. With the question as to the sale of his stock

by Feely, the plaintiff was not seeking to prove its transfer as shown on the books of the corporation, but only as to how far the defendant knew of such sale. The fact that the company was losing money would not be an attempt to show its financial condition in detail but generally, and which would be within the peculiar knowledge of the defendant, its treasurer. What influence, if any, this condition of affairs might have on him would be material as tending to show an inducement to sell his property.

How far the cross-examination of a witness may be deemed helpful and relevant to the issue being tried, as well as to what extent the accuracy, veracity or credibility of witnesses may be tested, must be left largely to the sound discretion of the presiding judge, and is not open to revision, unless it is shown that such discretion has been exercised in a way that results in the prejudice of a party to the cause by reason either of too narrow restriction or too great breadth of inquiry. *Moody* v. *Rowell,* 17 Pick. 490, 498. *Commonwealth* v. *Shaw,* 4 Cush. 593. *Rand* v. *Newton,* 6 Allen, 38. *Prescott* v. *Ward,* 10 Allen, 203, 209. *Commonwealth* v. *Lyden,* 113 Mass. 452. *Wallace* v. *Taunton Street Railway,* 119 Mass. 91, 93. *Thayer* v. *Boston,* 124 Mass. 132, 148. *Barrett* v. *Murphy,* 140 Mass. 133, 143. *Commonwealth* v. *Schaffner,* 146 Mass. 512, 515. *Commonwealth* v. *Brady,* 147 Mass. 583. *Lewis* v. *Boston Gas Light Co.* 165 Mass. 411, 414. *Munro* v. *Stowe,* 175 Mass. 169, 172. *De Forge* v. *New York, New Haven, & Hartford Railroad,* 178 Mass. 59, 64. *Root* v. *Boston Elevated Railway, ante,* 418. These questions were within the rule.

2. The next exception is to the exclusion of evidence offered by the defendant that at the time when Podbury talked with Feely, not only was the Union privilege the subject of conversation, but that inquiry was made as to the "horse power of a certain mill privilege in Westwood." If considered as evidence tending to contradict Podbury, who, on cross-examination by the defendant, had said that he had no recollection of the latter privilege being mentioned, or treated as part of the defendant's reply to the plaintiff's case, it was collateral to the principal issue and irrelevant. No claim was made for services except for the sale of the Union privilege, and the defendant and his

witness made no denial that the purchase of this privilege was not discussed at the same time. *Perkins* v. *Adams*, 5 Met. 44, 48. *Hathaway* v. *Crocker*, 7 Met. 262, 266.

If it had been claimed that only the Westwood privilege was the subject of the interview, then the evidence might have been admissible, not only to contradict Podbury as a witness, but also that he had been given the sale of the Union privilege. Under the authorities the admission of this evidence was within the discretion of the judge who presided at the trial, and that discretion does not appear to have been wrongly exercised.

3. It was probably of some importance, under the circumstances of the case, for the plaintiff to show that Podbury had talked with the defendant about the sale of the Union privilege before he had a conversation with Feely. The defendant denied that he had employed either the plaintiff or Podbury or had ever talked with the latter about the sale of the privilege, and claimed that it was to be inferred from the testimony of Feely that Podbury's knowledge that it might be for sale was first obtained at the interview which took place in Feely's office. It was competent for the plaintiff to testify that he had a talk with Podbury before the date of the interview in which Podbury had spoken of their procuring a purchaser for the Walpole privilege. The evidence was offered not for the purpose of putting in the conversation, but to prove the fact that such a conversation had taken place. And it is not within the objection of the defendant that the " evidence elicited would be a conversation between the plaintiff and his own agent at which the defendant was not present or represented."

So limited, there was no error in the admission of the evidence. *Rumrill* v. *Ash*, 169 Mass. 341.

Mr. Joseph J. Dunn was also called in rebuttal, and was allowed in substance to testify that in consequence of a talk with Podbury, in which " Podbury told him that Mr. Feely was the owner of the Union Mill privilege at Walpole," he went with Elwell, with whom he was associated, to see Feely. As the defendant had testified that he had met Dunn and Elwell at the office of Mr. Feely, at the suggestion of the latter, and left it to be inferred that as a result of the interview he had finally sold the privilege, the evidence was competent at some point in the

trial to show that Podbury had found a purchaser, and would have some tendency to contradict the evidence of the defendant as to an independent sale, as well as his contention that Podbury was seeking to buy and not to sell.

This disposes of all the questions raised by the exceptions, and in the absence of a statement to the contrary it is presumed that full and proper instructions were given to the jury of the probative value of the evidence admitted.

We find no error of law at the trial, and the order must be

*Exceptions overruled.*