FRANK DEL VISCO vs. GENERAL ELECTRIC COMPANY.

Suffolk.   March 3, 1920. — April 1, 1920.

Present: RUGG, C. J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Negligence*, In removing fence.  *Witness*, Cross-examination.  *Evidence*, Materiality, Competency.

The admissibility of certain questions asked in cross-examination of a former employee of the defendant, who was called as a witness for the plaintiff at the trial of an action of tort for personal injuries alleged to have been caused by the negligence of the defendant in removing an iron fence, was *held* to have been within the discretion of the trial judge.

In the same action it was *held* that cross-examination of the defendant's foreman, who was called as a witness for the defendant, to elicit the reasons why a former employee of the defendant, who had testified for the plaintiff, had been discharged, was wholly within the discretion of the trial judge.

At the trial of an action of tort for personal injuries resulting from the fall of an iron fence and alleged to have been caused by the negligence of the defendant in leaving the fence in a dangerous condition while in process of removing it, the defendant is entitled to show that the fall of the fence happened, not through his negligence but because of the acts of others who unlawfully climbed on or loosened or interfered with it, causing it to topple over, and inquiry of witnesses tending to prove that contention is admissible in evidence.

TORT for personal injuries resulting from the falling of an iron fence alleged to have been left in a dangerous condition by the defendant while it was being taken down and removed.   Writ dated March 1, 1918.

In the Superior Court the case was tried before *Hitchcock*, J. Material evidence and exceptions saved by the plaintiff are described in the opinion.   There was a verdict for the defendant; and the plaintiff alleged exceptions.

*J. J. Mansfield*, for the plaintiff.

*E. S. Underwood*, for the defendant.

BRALEY, J.   The action is in tort for personal injuries alleged to have been caused by the negligence of the defendant, and, the jury having returned a verdict for the company, the case is here on the plaintiff's exceptions to the exclusion and admission of evidence.

It appears and the jury could find on the evidence of the plain-

tiff's witnesses, that the defendant "had certain land and buildings" bounded on one side by a street and on another side by a large vacant lot not being the property of the defendant, but "used by the general public as a playing-ground and dump." A fence constructed in sections set between concrete posts with a top and bottom rail of angle iron, and "three quarters inch iron pickets inserted through holes drilled in the rails," ran between the defendant's premises and the lot. The defendant's employees had been engaged for about two days before the accident in removing the fence. The nuts had been oiled, loosened and then turned back "hand tight," so that they could easily be removed. When this had been done the fence was taken down by the workmen in sections, and as each section was freed it was carried away. The removal under this method proceeded until four o'clock in the afternoon of the day of the accident when the workmen began to remove "all the nuts and bolts from the remaining sections" and at five o'clock when they ceased work, "several sections of the fence" were left "without either nuts or bolts to keep them in place." The plaintiff, a boy seven years of age, testified, that while on the vacant lot he sat down about five feet distant from, and with his back toward the fence, when "the fence fell on him and injured his head." It was contended by the plaintiff that the section which fell had been left by the workmen in a dangerous condition, and that "it fell without being interfered with." The defendant, on the other hand, contended, that the fence would not have fallen unless the boys who were with the plaintiff, or "some one not authorized to do so removed the nuts and bolts after" its "employees ceased work."

We take up the exceptions in the order presented by the record.

The question asked in cross-examination of one Marra, a former employee of the defendant, called as a witness by the plaintiff, "You left the fence that night so that it would stand all right unless somebody pulled it down, didn't you?" and the answer, "Well, if the wind blowed hard it might fall down," were permissible within the discretion of the presiding judge. *Jennings* v. *Rooney*, 183 Mass. 577. The defendant's foreman was properly allowed to testify that on the day of the accident there were "some boys there most of the time," and that "We would drive them off

the premises," as well as to state that boys had been driven off the fence upon which they were climbing, and that the boys had been told "to get off the premises." It also was relevant to ask "Was the fact of boys being about there one of the reasons for doing away with the nuts and bolts as you have described;" and to the answer, "We put the nuts and the bolts on the top rail for safety's sake," no exception was saved. The defendant was entitled to show that the fall of the fence happened not through its negligence but because of the acts of others who unlawfully climbed on, or loosened, or interfered with the fence causing the section in question to topple over. *Barber* v. *C. W. H. Moulton Ladder Co.* 231 Mass. 507. *Donahoe* v. *New York & New England Railroad,* 159 Mass. 125. The question, "Were the pickets run through holes drilled in the iron" was merely descriptive of the construction of the fence, and for that purpose it was admissible, no objection to the form of the question having been specifically taken. *Gagnon* v. *Sperry & Hutchinson Co.* 206 Mass. 547. The cross-examination of the defendant's witness Chick to elicit the reasons why he had discharged Marra was wholly within the discretion of the court, and the ruling excluding the question, "Why did you discharge this man Marra, who testified?" presents no error of law. *Jennings* v. *Rooney, supra.* The question in direct examination to the police officer called by the defendant, and who had been familiar with the premises, and observed the conduct of the boys while the fence was being removed on the day in question, "What had you observed as to whether boys were upon or about that fence?" has become immaterial because the answer was finally excluded. The next question to this witness was, "What had you observed the children doing about that fence?" to which he answered, "Well, they were running in through," and "On that very day I drove children off the little shed the General Electric had built when they were taking down the fence." The plaintiff excepted to the question and asked that the answer be stricken out, and excepted to the ruling of the court, that "The answer may stand." The next question also excepted to was, "Were those sheds on the property?" answer, "Yes, sir." The evidence of the defendant's witness, one Rome, that on the day the fence was being taken down, "I see many times dozens of times, three or more boys take hold of the fence, and shaking him up," to which exceptions also were saved, is of a

like character. We are of opinion that this line of inquiry, not being too remote, tended to support the contention that the fence fell because of children climbing on or playing with it, and that if left undisturbed by them the accident would not have happened. *Commonwealth* v. *Billings,* 97 Mass. 405.

The plaintiff, on whom the burden rests, having failed to show that he has been aggrieved, the exceptions must be overruled. *Zamore* v. *Boston Elevated Railway,* 198 Mass. 594, 597.

*So ordered.*